172 So.2d 374

**DEPARTMENT OF INDUSTRIAL
RELATIONS**

v.

**Robert O. HENRY.**

**7 Div. 767.**

Court of Appeals of Alabama.

Dec. 15, 1964.

Rehearing Denied Jan. 19, 1965.

J. Eugene Foster, and Chas. P. Miller, Montgomery, for appellant.

C. W. McKay, Ashland, for appellee.

PRICE, Presiding Judge.

In this unemployment compensation case benefits were denied the claimant by the claims examiner, the appeals referee and the board of appeals. On appeal to the Circuit Court of Clay County benefits were allowed. This is an appeal by the Director of Industrial Relations from the judgment awarding benefits.

The record shows that Robert O. Henry had worked for the Alabama Novelty House in Birmingham off and on for thirty years. The last time he worked for the company, doing the same kind of work as when he left, was about four years. He was collecting from house to house, selling and delivering merchandise sold by the store. His work required him to be outside and exposed to the weather. Some fifteen or eighteen years before the trial of this case he was collecting for the company. It had been cold and raining for a week. He had a regular route and he was required to carry heavy samples of merchandise weighing up to fifty pounds, to climb the stairs, make long walks from his car across yards, etc., which would expose him to the weather, and caught the "flu." He continued to work for the company, in the same type of work, during which time his physical condition grew worse. At the time he had the "flu" he did not notify the company the work was aggravating his condition, but he notified the company of his condition about a year before he quit. The company representative said they wanted him to work on as they did not have anyone to take his place, because of the nature of the work.

During the time claimant worked for the company, he acquired experience sufficient to do work other than the job he was doing. The company had stores all over the State and at one time he was manager of a company store at Jasper. His wife ran the store and he worked outside, except for one day each week when he worked in the store.

By agreement the following doctor's certificates were introduced in evidence:

"H. S. Watkins, M.D.

Oakman, Alabama

April 24, 1963

To Whom It May Concern:

I have treated Mr. R. O. Henry since 1950 for pulmonary emphysema, pulmonary fibrosis, and bronchial asthma. This condition has grown progressively more severe, and at this time he is totally unable to do any kind of profitable manual labor.

"H. S. Watkins, M.D."

\*    \*    \*    \*    \*    \*

"Thomas C. Donald, Jr. M.D.

Warren G. Sarrell, M.D.

"Claude M. Holland, Jr., M.D.

Robert H. Lokey, M.D.

Practice Limited to Internal Medicine

To Whom It May Concern:

April 19, 1963

Re: R. O. Henry

Birthdate: 9/29/1898

Route #1

Delta, Alabama

This is to certify that I am a physician, licensed to practice medicine in the state of Alabama. The above named patient has been under my medical care since August 18, 1958. He has pulmonary emphysema, pulmonary fibrosis and chronic asthmatic bronchitis.

This patient at times has severe limitation of his activities due to the above disease state. He requires constant medication. I have advised that he restrict his activities and avoid doing any type of work other than that of a sedentary nature.

"Thomas C. Donald, Jr., M.D."

Claimant testified pulmonary emphysema is "your lungs are kinda like honeycomb and these little cells they bust, and when they do that that part of your lungs is dead, it doesn't function any more." Any kind of exertion like climbing steps or walking up a hill or anything like that affects him. His Pulmonary Emphysema continually gets worse.

Section 214 subd. B, of Title 26, Code 1940, provides:

"An individual shall be disqualified for total or partial unemployment:

\* \* \* \* \* \*

"B. If he has left his employment voluntarily without good cause connected with such work; \* \* \*."

In Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629, the court said:

"Ill health or physical infirmity is, of course, good cause for employees to cease working. But unless the illness or physical infirmity is shown to have resulted from or to have been caused by the employment, the employee is disqualified from receiving benefits when he voluntarily leaves his employment on account of such illness or physical infirmity. In other words, the cause for quitting may have been a good one, but the cause must have been connected with the work."

In the Henderson case benefits were denied because the evidence failed to show that claimant's physical disability resulted from his work or that his work increased his disability or made it more serious.

In Bussmann Mfg. Co. v. Industrial Commission of Missouri, Mo.App., 327 S.W.2d 487, the court held that in order to prevent disqualification under the applicable statute, "it is not necessary for the claimant to sustain the burden of showing that her nervousness was caused solely and only by the work she was doing. Work causing an aggravation of an existing condition, or work that was a contributing factor to the illness is also encompassed within the meaning of the clause 'attributable to his work or to his employer,' the only requirement being that there exist a causal connection between the work and the aggravation of, or contribution to, the disability. In short, even if we assume appellant is correct in its contention that the cause of respondent Abbott's nervousness was her menopausal difficulties, if the evidence would support a finding of aggravation of her nervous condition by her work, or that such work contributed to her nervous condition, then respondent would not be disqualified," under their statute.

The court further pointed out that the Missouri statute provided that in determining whether the claimant was disqualified for failure to apply for available suitable work it was proper to consider the degree of risk involved to his health, safety and physical fitness, citing and quoting from Fannon v. Federal Cartridge Corp., 219 Minn. 306, 18 N.W.2d 249, 252, 158 A.L.R. 389, as follows:

"Under this section, a claimant cannot be disqualified for refusing to accept employment which may be a risk to or endanger his health. If this be true, then certainly it is unreasonable to hold that a claimant must lose credits or be denied benefits where he has been compelled to terminate employment because such employment has resulted in a physical condition or disease likewise dangerous to health and personal safety."

In Department of Industrial Relations v. Chapman, 37 Ala.App. 680, 74 So.2d 621, where this court also cited the Fannon case, supra, Judge Harwood said: "Under our statute there is a close kinship between disqualification because of refusal of suitable work (Sec. 214(E) Title 26, Code), and disqualification for voluntarily leaving employment without good cause connected with the work." (Sec. 214(B) ).

"We think that if a disability would justify a refusal of a proferred job, such disability must also be considered as a good cause for quitting a job of the same nature as the proferred one, provided of course that there is a causal connection between the work and the disability. * * *"

Paraphrasing the language of the Chapman case, supra, it is inconceivable that this claimant would be held disqualified if he refused to accept another job requiring him to climb stairs, and walk long distances carrying heavy samples, in cold, rainy weather, in view of the probable risk to his health.

■ We conclude that the claimant quit his employment with good cause connected with his work.

The other question presented is whether the claimant was physically able to work and available for work within the meaning of Section 213, subd. C, Title 26, Code 1940.

The claimant registered for work at an employment office in accordance with regulations. He testified he was qualified and able to do clerical work, filing and bookkeeping; that he had had experience in this type of work; that when he was manager of the Jasper store he kept the books and also taught his wife to keep them. The company had inside work he could do but the company representatives told him they did not have any inside work he could do, and have never told him since that inside work was available.

Claimant lives about twelve miles north of Lineville, Alabama, on property he has owned for thirty years. He had been living there since January last year and was living there during the time he was filing his claim for benefits. He applied several times for indoor work to Mr. Dial who has charge of the Cheaha Park Concessions in the summer months; there was no other employment of the type he could do in that area.

The circuit judge stated in his decree: "Further the court has personal knowledge of the place of residence of claimant as testified by him and that the Cheaha State Park is about the only place within the proximity of the residence of claimant where he could conveniently make inquiry for employment."

On cross examination claimant stated there were stores in Lineville that employed clerks, and he presumed there were stores that employed bookkeepers, but he did not apply to any of the stores for a job as clerk or bookkeeper. He did not know the population of Lineville, but if all the stores were put together they would amount to about four city blocks. The town has a furniture store, two or three grocery stores and a five and ten cent store. Claimant's wife can do the same kind of work as he can do and she applied at all the stores at Lineville but was never called for work.

■ Under the facts of this case we cannot say the trial court erred in finding that the claimant acted in good faith in his efforts to find suitable employment. Alabama Department of Industrial Relations v. Anderson, 41 Ala.App. 267, 128 So.2d 532.

The judgment below is due to be and hereby is affirmed.

Affirmed.

CATES, Judge (concurring).

I concur in the foregoing.

On September 2, 1949, Senator Mize's bill became law and put beyond all doubt the meaning and scope of the language in Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629. Act No. 526, 1949 Acts, p. 806.

For the first time, the unemployment insurance act expressed the principle that an employee's taking sick leave would not forfeit his wage credits.

In the course of the legislative compromise, the sick leave exception to § 214,

subd. B, supra, had tacked onto it the following proviso:

"Provided, however, that nothing herein shall be construed or interpreted as authorizing the payment of benefits to any person during or for unemployment due to sickness or disability."

This was merely reiterating in a "Thou shalt not" form the conditions in § 213, subd. C of the act that a claimant be ready, willing and able to take suitable work.

In Department of Industrial Relations v. Chapman, 37 Ala.App. 680, 74 So.2d 621, however, the sick leave provision was in the law when the claim was filed. The circuit court had found, inter alia, that Chapman was forced to leave work because of a physical disability caused or substantially contributed to by his working conditions. Also that:

"* * * The employer had no other employment available at the time of the separation."

The Chapman opinion does not directly refer to the 1949 amendment to § 214, subd. B, supra. Rather, it rests its reasoning on the Henderson opinion extended by evidence of cause and effect between disability and work.

West Point Mfg. Co. v. Keith, 35 Ala. App. 414, 47 So.2d 594, arose before the 1949 Act, supra, but was decided in 1950. Accordingly, much of what was there said must be viewed as changed in emphasis. Under the amended law Mrs. Keith, in a like case, would probably have suffered disqualification because of failure to ask for sick leave as established by the employer's procedures.

In the instant case, the claimant was disabled from his former work. He notified his employer, it would seem. The employer reported to the unemployment insurance division that he had retired.

█ It is clear (a) that he could no longer carry on his old work, and (b) that there was no need to expect a convalescent sick leave might improve his lungs. Therefore, if the employer could not offer him at that point less burdensome work suitable to his physique and training or education, he was not quitting Alabama Novelty House within the meaning of § 214, subd. B, as amended.

That left here the sole enquiry as to whether he put himself so deep in rustication that, like Thoreau at Walden Pond, he was wholly withdrawn from the workaday world.

No evidence came in that the claimant's condition affected his ability to drive a car to and from work. Anniston and Talladega are large urban centres not too far away.

█ In view of the Mize amendment of 1949 substantially modifying Henderson and Keith, supra, I consider the sole question here presented falls under § 213. There was substantial evidence to support a finding that the claimant was ready, willing and able to take suitable work.

PRICE, P. J., concurs herein.

## ON REHEARING

PRICE, Presiding Judge.

Appellant requests that we extend our opinion "to set out evidence that the period of time for which appellee filed claims for benefits which were the basis of this case was for a 26 consecutive—week period beginning February 2, 1963 (tr p. 24)."

Pages 24 and 25 of the record substantiate the desired statement.

Application overruled.